## W. C. ROBERTS AND WIFE v. D. F. STUART, EXECUTOR.

### No. 3086.

1. **Pleading.**—A legatee sued an executor for his alleged failure and refusal to deliver certain articles, silver plate, etc., given plaintiff by the testatrix. It was competent in answer to show that immediately on the death of the testatrix defendant, who was the executor, knowing that the will would be contested, obtained temporary letters of administration and had taken possession and preserved the articles, and as soon as the contest of the will was ended and the will established he had qualified as executor and had turned over the property to the plaintiff.

2. **Immaterial Finding by Court.** — A finding of fact by the court of a date later than that shown by the testimony on which temporary letters of administration were obtained is of no importance. In this case the facts showed an earlier date than the finding, and the date was only of importance to show care by the executor for the welfare of the estate.

3. **Facts Supporting a Finding.**—See testimony held to support a finding as a fact the theft of certain articles before letters of temporary administration had been obtained, and negativing the allegation that the testatrix died in possession of the property sued for.

4. **Duty of Temporary Administrator — Proper Care.** — An administrator is charged with the duty of using resonable care for the preservation of the property of the intestate. The finding of the court that "he used every possible effort" included ordinary care, and the testimony sustained the finding.

5. **Care Required of Administrator.**—The rule of liability of all general executors and administrators is for all assets that have come into possession, or that might

have been reduced to possession by the use of ordinary care, but they are not liable for negligence before they qualify except as to property in possession.

6. **Duty of Administrator Pro Tempore.** — An administrator *pro tem.* is certainly not required to use diligence before he qualifies. After he qualifies he is bound to use ordinary care to recover and hold assets within the scope of his power as fixed by the order of the court appointing him. Rev. Stats., arts. 1882, 1933.

7. **Liability of Executor.** — The court properly held as a conclusion of law that an executor can not be held liable for personal property of his testator which never came into his possession or control, and which had been stolen before his qualification.

8. **Same.**—Under our laws the executor has no title to or authority over the estate until the will is probated and he qualifies as directed by the statute. He does not hold under the will before probate.

9. **Same—Executors at Common Law.**—See discussion of the rights and duties of executors under the statutes and under the common law. Rev. Stats, art. 1817.

APPEAL from Harris. Tried below before Hon. James Masterson. The opinion contains a sufficient statement.

*Gustave Cook,* for appellants.—1. The court erred in overruling plaintiffs' demurrer and exceptions to defendant's first amended answer. [See opinion.] Bouv. Law Dic., title "Executor;" Rev. Stats., art. 1815.

2. An executor takes by the will. Bouv. Law Dic., title "Executor;" Rev. Stats., art. 1815.

3. Where an executor accepts the appointment and receives the will, then upon the death of the testatrix he is entitled *eo instanti,* and it becomes his duty to take possession of the property of the estate, preserve and protect it, as the nature and situation of the property and the circumstances may require; and he has lawful authority to invoke the process of the law and courts to enable him to do so, whether he has filed the will for probate or not, or whether he has technically "qualified" or not; and even if it were necessary for him to do either, or both, or to take letters of temporary administration, it would be his imperative duty to do so if the nature and situation of the property and the circumstances were such as reasonably to suggest the necessity for it.

4. The court erred in finding as a conclusion of law "that an administrator *pro tem.*, who never came into possession or control of personal property of a deceased party either before or after his qualification as such administrator, can not be held liable for such property, and is not liable after his qualification, except for negligence, when he does not come into such possession."

5. An executor is liable before taking out letters testamentary, or of administration *pro tem.*, where the nature and situation of the property and the circumstances of the particular case show distinctly that it is absolutely necessary to the preservation of the property, and he is authorized to institute any and all legal proceedings necessary to accomplish it, and it is no excuse that he has not letters *pro tem.* when such

letters could be immediately obtained and in ample time to recover and preserve the property.

6.   An executor is liable where, having accepted the appointment and having ample notice that property of the estate is in peril of immediate loss, he fails to take any and all legal steps necessary for its rescue and preservation, and this whether it be such process as he is authorized to take as executor or to procure letters of administration *pro tem.*

*W. H. Crank* and *C. W. Bocock*, for appellee.—1. There was no error in the finding of the court; that it was a material fact going to relieve the executor from liability.   Though an executor may take by the will, under our law it is no will and can take no effect until it is probated. The executor of Mrs. Buckley had no right to control or take possession of the property of her estate until the will was duly probated and established and his authority recognized by a court of competent jurisdiction.   The evidence shows in this case that he used all diligence and more than he was bound to use in suing out letters of temporary administration; which he was no more bound to do than the devisees under the will, particularly under the circumstances, as disclosed by the evidence.   Rev. Stats., arts. 1817, 1877; 7 Am. and Eng. Encyc. of Law, 793.

2.   There is no error in the finding of the court that the facts fail to show that Mrs. Buckley died possessed of the silverware in question, and the court having passed upon that issue it will not be disturbed unless it appears that the judgment of the court is clearly against or unsupported by the evidence.

3.   The evidence as to the qualification of Stuart as administrator *pro tem.* was material to the issue involved, that of the diligence of the executor; it was not objected to at the time or during the trial, and it clearly established the fact sought to be proved, and the evidence not having been objected to in the court below the finding of the court, which was clearly right, will not now be disturbed.

4.   The facts showed that the executor used all diligence to protect the property of the estate; that he was guilty of no negligence, and that the property in question at no time came into his possession.

5.   The facts showed that there was a contest of the will of Mrs. Buckley, which lasted about fifteen months; that he did not qualify until such contest was ended, and that the property in question, if it belonged to the estate of Mrs. Buckley at the time of her death or was in her possession when she died, never came into the possession of or under the control of the executor, and that he could not be held responsible for it as a matter of law.   Rev. Stats., arts. 1817, 1877; Schoul. on Exrs. and Admr., sec. 194.

COLLARD, JUDGE.—The first assignment of error is that "the court erred in overruling plaintiffs' demurrer and exceptions to defendant's first amended answer, because it was not responsive to plaintiff's petition in that for answer it is alleged that defendant on the 23d day of January, 1888, eight days after the death of Mrs. Ann R. Buckley, filed his petition to probate the will of Mrs. Buckley, and on the 8th day of March, 1888, Mrs. Mary L. Robinson filed her contest of the probate of the will, which continued till the — day of April, 1889, all of which is wholly immaterial, irrelevant, and in no way affects the merits or the issue of the suit."

The second assignment of error is "that so much of the answer as sets out when defendant qualified, to-wit, as he alleges, in April, 1889, the same being a legal conclusion and not a fact, is wholly immaterial, irrelevant, not responsive to plaintiff's petition, and presents no issuable fact in the suit."

The petition alleges "that as executor, Stuart immediately after the death of Mrs. Buckley took possession of the property sued for, and has ever since retained it, neglecting and refusing to deliver it or any part of it to petitioners, although often demanded of him; and that the said Stuart, executor as aforesaid, still has and withholds from petitioners without right the possession and use of the silverware and silver plated ware aforesaid; and that the use and enjoyment thereof is and has been since the 15th day of January, 1888 (the date of Mrs. Buckley's death), reasonably worth $10 per month." The prayer of petitioners, among other things, was for the reasonable value of the use and enjoyment of the property sued for.

It needs no argument to prove that Stuart, if he had been in possession of the plate, could not carry out the terms of the will by delivering legacies until it had been duly probated, and that he would not be liable in any way for withholding a legacy pending a contest over the probate of the will. The answer was pertinent to this issue, and set up a sufficient reason for the alleged detention of the property. The same may be said of the allegation in the answer of the time when defendant qualified as executor. He would not be authorized to act under the will until he assumed the trust by qualifying as required by law; at least he would not become liable for a failure to deliver legacies before he qualified. He was bound for the safe keeping of the property that came into his possession as administrator *pro tem.*, and to have the same forthcoming to abide the result of the contest. As soon as the will was finally established by the affirmance of its probate by the Supreme Court he qualified and at once delivered to plaintiffs all the property in his hands bequeathed to the plaintiffs. There was no error in the ruling as assigned.

The next assignment of error is "that the court erred in finding that pending the contest over the probate of the will Dr. Stuart qualified as

temporary administrator of Mrs. Buckley's estate." The evidence shows that Stuart qualified as temporary administrator on the 26th of January, 1888, and that Mrs. Robinson filed her contest propounding a prior will of Mrs. Buckley for probate on the 8th of March following.

The finding of the court was not strictly according to the facts, but such a finding could not have affected the result of the suit, at least to the detriment of the plaintiffs.

The suing out of temporary letters so much earlier than as found by the court showed more diligence on the part of Stuart to protect the estate from depredation and waste than the finding of the court allowed. As soon as he heard the report of the theft of the silver he employed a detective agency to look after the case, and had the agency to send a watchman to the house where the property was to prevent the theft of other articles, who remained there until the temporary letters were granted and the personal property bequeathed to plaintiff was removed.

Before he applied for temporary letters he had been advised by Mrs. Robinson that she would contest the will of Mrs. Buckley, her mother, and offer an earlier will for probate. The contest had not actually commenced over the probate of the will, but it was threatened and it was afterward filed by Mrs. Robinson, who propounded an earlier will for probate, contesting the will filed by Stuart upon the ground of want of testamentary capacity of the testatrix. These facts tend to show diligence on the part of Stuart to protect the estate, more than was accredited to him by the finding of the court. Plaintiffs have no ground of complaint.

The next assignment of error is that "the court erred in finding that the silverware bequeathed to Lula Roberts was stolen by some one, and that none of it (sued for in this case) ever came into possession of the administrator *pro tem.*, or of the executor, or of Stuart in any capacity."

The facts relied on to show that he did have possession of the property are that it was in proof that there was such property belonging to Mrs. Buckley, and circumstances indicating that it was in the house where she died and where Mrs. Robinson lived at the time, and it is contended that he put Mrs. Robinson in possession of the same. This contention is predicated upon the following facts: On the 20th of January, before the will was filed for probate, and before temporary letters were issued to him, he went to Mrs. Robinson's house, rather the house devised to her and in which the silver was supposed at the time to be, and informed her of the will and that he was the executor. She got into a rage, disputed his statement, denied that he was the executor, and declared that her mother left an earlier will leaving to her the most of her property. There was testimony to the effect that he then told her that "she would have to be responsible," to which she replied that she "reckoned she was responsible." Stuart left, saying he would call

again when she was calmer. He testified that he did not tell her she would be responsible or leave her in charge of the property. Without the statement of Stuart the conversation with Mrs. Robinson could not be construed to mean that he put her in possession of the property of the estate. It only meant that she was laying herself liable for the safe keeping of the property that was in the house. It was in the province of the court to accept the testimony of Stuart, and with that accepted as the truth there could be no doubt that he had not assumed to put her in charge of the property. It was not error to find as the court did on this question.

The next assignment of error is that the court erred in finding that "there was no evidence that Mrs. Buckley died possessed of the silverware, which is the subject matter of this suit, nor does the evidence show exactly when it was stolen."

As before stated there was evidence showing that Mrs. Buckley had owned such ware; Mrs. Lula Roberts had seen it often, not all of it together, but different portions of it at different times at her father's house, where her grandmother had kept it for a time, and at her grandmother's house. She had not been to her grandmother's house oftener than two or three times within six or eight months prior to her death, owing to some unpleasantness in the family, but had never heard of her grandmother parting with it, or that it was stolen, except since her death. She had seen a good deal of it while at her house during her last sickness.

A. B. Nibbs, a son of Mrs. Buckley and father of the plaintiff Lula Roberts, was pretty constantly about the house where his mother was sick for some twelve or fifteen days and nights, save occasional visits to his own house. Mrs. Buckley took it from his house herself and he had seen it there and at her house where she died, and particularly during her last illness he frequently saw portions of it. He had never heard that she had disposed of it in any way nor that it had been stolen. Witness made a list of the ware sued for from memory, assisted by his wife, who had since died, and the list sued for he says is correct to the best of his knowledge and belief.

Stuart testified that he had never seen the ware and knew nothing about it. He says that "some one telephoned him from Mrs. Baldry's that some one had entered the house where Mrs. Robinson lived and had taken a lot of silverware." This was on the 25th of January, 1888, after Mrs. Buckley's death. It would be difficult to find upon these facts when the property was stolen. The anonymous telephone message affords but little that can be relied on. No reasonable certainty is attainable from the evidence as to the exact time when the theft occurred or by whom it was committed, and there was no error in the court so finding.

Appellants complain that "the court erred in finding that before Stuart qualified as administrator *pro tem.* the theft was reported to him, and he, immediately after qualifying, employed detectives and used every possible effort to recover the same."

Stuart was doubtless urged to take out temporary letters upon the estate by the report of the theft. As soon as he heard of the theft he counseled with his attorney and they concluded to send a watchman to the house to protect the other personal property bequeathed to Mrs. Roberts left in the house. He reported the theft to the Morris Detective Agency, who advertised for information, offering a reward, and sent a watchman to the house. This watchman testified that he examined the premises carefully and was satisfied that no one had entered from the outside, and that if there was a theft it was committed by some one inside the house. He remained there until after the temporary administration was obtained and all the rest of the property willed to Mrs. Roberts was taken away by Stuart's attorney, consisting of silverware and silver-plated ware, which was kept by him (Stuart) until the will was probated, when it was delivered to plaintiffs.

Stuart testified: "We had a reward offered for the articles alleged to have been stolen. I don't know whether any things were stolen or not. I never saw it and did not know that Mrs. Buckley had any such property except from what Mr. Nibbs, the father of plaintiff Mrs. Roberts, and other members of the family told me. The supposed lost articles were advertised for from data furnished me by Mr. Nibbs or some member of the family. How they knew these articles were in the house when Mrs. Buckley died and were stolen I don't know. No demand has ever been made upon me for the articles sued for in this case. All the property, real and personal, which came into my hands as executor to which the plaintiffs are entitled under the will has been delivered to them. The property turned over to them consisted of a large lot of silver and silver-plated ware." It was proved that in all matters relating to the estate he acted upon the advice of W. H. Crank, Esq., whom he retained as counsel at request of Mr. A. B. Nibbs.

The facts warranted the court in finding that Stuart had used all reasonable diligence to recover the property. What Stuart did toward protecting or recovering the property before he qualified as temporary administrator was gratuitous; what he did or had done afterward only had to amount to ordinary diligence to acquit him of liability. Rev. Stats., art. 1933. The court's language was too strong. "Every possible effort" to recover the alleged lost articles was not demanded, but the expression would include the less degree of care required by the statute, which from aught that appears was used. Plaintiffs do not show us what other diligence might have been used.

Appellant complains that the following finding was error of law: "An administrator *pro tem.* who never came into possession of or control of

personal property of a deceased either before or after his qualification can not be liable for such property and is not liable after his qualification except for negligence when he does not come into such possession.'' We think the rule of liability of all general executors and administrators is for all assets that have come into possession or that might have been reduced to possession by the use of ordinary care, but they are not liable for negligence before they qualify except as to property in possession. An administrator *pro tem.* is certainly not required to use diligence before he qualifies. After he qualifies he is bound to use ordinary care to recover and hold assets within the scope of his power as fixed by the order of the court appointing him. Rev. Stats., arts. 1882, 1933. This and other assignments involving the law of liability of the executor and temporary administrator must be considered in connection with the finding of the court that Stuart used all possible diligence to recover the stolen property. So considered we find no error in the finding referred to in the last assignment, even if the order for temporary administration required the administrator to take control of all the personal estate. If the administrator used reasonable and ordinary care in the matter intrusted to him without success he would not be liable.

The following two assignments may be considered together:

''The court erred in finding as a conclusion of law 'that an executor under a will, until he qualifies as such by taking the oath and giving bond when he is not exempted from giving bond by the will, or taking the oath when he is exempted, can not be liable for personal property of his testator which never came into his possession and which was stolen before he qualified.'

''The court erred in finding that an executor is not liable for property which never came into his possession or control, and which had been stolen before his qualification.''

The main proposition insisted upon by appellants under the first of these assignments is that the will is of itself without probate a sufficient authority to charge the *named* executor with the duty of reducing personal property to possession, and if he fail to do so before probate he would be liable for loss. We can not accede to such doctrine. It is true we have a statute that declares that the rights, duties, and powers of executors and administrators shall be governed by the common law when it is not in conflict with any of the provisions of the statutes of the State (Rev. Stats., art. 1815), and it is true that the common law recognizes in the executor named in a will considerable power before probate of the will. ''Thus he may collect the assets, pay, receive, or release debts, sell or dispose of the goods and chattels, pay legacies, distrain for rent due the testator, or enter upon the testator's term for years.'' 7 Am. and Eng. Encyc. of Law, 191; 1 Lomax on Exrs., 185, 186. If he has been in possession he can maintain an action, but he

can not maintain an action upon his constructive possession, because he can not exhibit title except by probate of the will. These and many other powers are given at common law to the executor before probate, because immediately upon the death of the testator the estate vests in the executor (1 Will. on Exrs., 629), and therefore he becomes charged with certain duties.

In our State, upon the death of the testator, as well as the intestate, the estate vests in the legatees under a will, or the heirs of the intestate, "but upon the issuance of letters testamentary or of administration upon any such estate the executor or administrator shall have the right to the possession of the estate," etc. Rev. Stats., art. 1817. Under our law the property so vesting in the heirs or legatees is subject to the debts of the estate, except such of it as is exempt. Evidently under our laws the executor has no title to or authority over the estate until the will is probated and he qualify as directed by statute. The case of Stone v. Dorsett, 18 Texas, 706, does not change the rule. It only decides that a testamentary guardian would not forfeit his right to the guardianship by proceeding to carry out some of the terms of the will before he qualified and gave bond. We do not doubt that before probate and qualification the named executor may proceed to execute some of the provisions of the will in good faith without incurring the liability of an intermeddler or of embezzlement. The court might subsequently approve and validate his acts. In this respect his attitude is precisely that of an administrator. He derives no authority from the will itself, and acquires no title by it. After probate it becomes his duty "to recover possession of and hold such estate in trust to be disposed of according to law." Rev. Stats., art. 1817. The common law can not apply. Stuart had no power and it was not his duty to act as executor in recovering any property of the estate until he qualified as such executor after probate of the will, nor was he because he was named as executor under any more obligation than a stranger to procure temporary letters upon the estate. Add to what has been said on this subject the finding of the court, heretofore approved, that after Stuart's qualification as temporary administrator he used every possible effort to recover the alleged stolen property, and we are at the end of the discussion. Some of the minor questions noticed really need not have been examined at all in view of these important main principles, that until probate of the will and qualification as executor Stuart could not be charged with neglect of reducing personal property to possession for the simple reason that he had no right to it; that he was no more bound to take temporary control of the estate by a *pro tem.* administration than any other person, and that he used all necessary diligence to recover the alleged stolen property after his qualification as temporary administrator.

The last assignment of error, that the court erred in overruling plaintiff's motion for a new trial, for reasons set forth in the ten foregoing assignments of error need not be considered.

Our opinion is the judgment of the lower court should be affirmed.

*Affirmed.*

Adopted March 24, 1891.