[Morrissett, Exec. v. Wood.]

# Morrissett, Exec. *v.* Wood.

*Action of Assumpsit.*

1. *Action to recover for medical services; admissibility of evidence.*
   In an action by a physician against an executor, to recover
   for medical services rendered by the plaintiff to the defend-
   ant's testator, the statement by the plaintiff, upon being ex-
   amined as a witness, that he knew the defendant's testator,
   that he had a certain disease and that he died from the effects
   of that disease complicated with another, involves no transac-
   tion with the deceased, and is not within any exception to the
   competency of parties to a suit as witnesses under the statute,
   (Code, § 1794).

2. *Same; same.*—In an action by a physician against an executor,
   to recover for medical services rendered by the plaintiff to the
   defendant's testator, testimony as to the value of the dece-
   dent's estate is irrelevant and inadmissible, where there is no
   evidence of a recognized usage in the community where the
   services were rendered, which had been so long established
   as to become a fixed custom, to graduate professional charges
   with reference to the financial condition of the person for
   whom the services were rendered, so that it might be con-
   sidered that the services in the present instance were rendered
   and accepted in contemplation of such custom.

3. *Same; same.*—In such a case, a hypothetical question expounded
   to an expert witness to prove the value of the services of the
   plaintiff in a suit, is objectionable where one of its postulates
   is the value of the deceased patient's estate. However, it is
   not necessary for such questions to postulate every fact of
   which there is evidence before the jury; but they are unobjec-
   tionable if they hypothesize a state of facts which the jury
   is authorized to find.

4. *Same; same.*—In an action to recover for medical services ren-
   dered, where testimony as to the services rendered by the
   plaintiff was competent at the time it was introduced, and the
   evidence was closed by both parties and the court adjourned
   until the next day, upon the court reconvening the next morn-
   ing, it is within the discretion of the court to allow the case
   to be re-opened for the purpose of permitting the defendant to
   introduce other evidence, the effect of which might be to show

[Morrissett, Exec. v. Wood.]

the impertinency of the testimony introduced by the plaintiff during the trial the evening before.

5. *Same; charge to the jury.*—In an action to recover compensation for medical services rendered, where there was no account of. fered in evidence by the plaintiff, but he sought to recover for the value of his services, a charge to the jury which contains instructions regarding the account of a physician is ab-stract and is properly refused.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

The appellee, Dr. M. L. Wood, brought an action of as-sumpsit in the circuit court of Montgomery county, against E. P. Morrisett as executor of the last will of B. L. Barksdale, deceased, to recover fifteen hundred dollars plaintiff claimed to be due him for medical services rendered to defendant's testator. After the plaintiff had filed his complaint, the defendant made a tender of $150 to the plaintiff, and upon his refusal to accept the same in satisfaction of his demand, defendant deposited said amount with the clerk of the circuit court, and filed a plea of payment.

At the trial of the cause the defendant made the statutory affidavit denying the truth of the entries in plaintiff's books, relating to the account sued on. The plaintiff then proceeded to prove his account by other evidence.

Prior to the trial the defendant had made a demand of the attorney for plaintiff of the list of the items composing his account, which was furnished to defendant's attorney and which is set out in the record.

On the trial the plaintiff was sworn as a witness in his own behalf and testified that he knew B. L. Barksdale and that he had tertiary syphilis for several years and died of syphilis of the brain and hypostatic pneumonia. The defendant objected to this testimony on the ground that it was illegal in that it was a transaction with the defendant's testator. The court overruled this objection, allowed the evidence to go to the jury, and the defendant duly excepted.

Dr. Goldthwaite, a witness for the plaintiff, testified that he was called with plaintiff to see defendant's testator in his last illness, and he stated that the cause of the

death was the same diseases as stated by the plaintiff in his testimony.

There were other witnesses introduced by the plaintiff, whose testimony tended to show that the defendant's testator suffered just before his death from the diseases as stated by the plaintiff in his testimony.

The plaintiff introduced as a witness Mr. Carr, who testified that he was often at the home of Barksdale during his life time; that Dr. Wood was the regular family physician of Barksdale, and that in the spring of 1895 he saw Dr. Wood, the plaintiff, attending Barksdale at his house; that this was on several occasions in 1894 and in the spring of 1895, and that he also saw him at Barksdale's house in the summer and winter of 1895 and during his last illness.

The plaintiff introduced as a witness Mr. Stowers, who testified that the estate of the defendant's testator was worth $30,000. The defendant objected to the introduction of this evidence as to the value of his testator's estate, upon the ground that the same was illegal and irrelevant. The court overruled the objection, and the defendant duly excepted. :

The plaintiff then introduced Dr. Lucius Gaston, and eight other physicians of the city of Montgomery, all of high character and professional standing, to each of whom the following question was propounded: "Assuming that B. L. Barksdale died in November, 1895, of syphilis of the brain and hypostatic pneumonia; that Dr. Wood treated the deceased as his regular physician for tertiary syphilis during a period extending, from March to November, during which time deceased frequently called at Wood's office for advice and prescriptions, say as often as twelve times a month during said period, and that sometimes Wood paid visits to Barksdale at his residence, attending him professionally during said period, and also attended him professionally for a period of eight days during his last illness, both by day and by night and prescribing for him for syphilis of the brain and hypostatic pneumonia, and assuming that he had, at the time of his death, an estate estimated to be worth thirty thousand dollars, upon this state of facts

please state what in your opinion would be a reasonable
compensation to Dr. Wood for the professional services
thus rendered to the deceased and chargeable against his
estate?" The defendant separately objected to this ques-
tion as propounded to each of said witnesses, upon the
grounds that there was no legal evidence in the case
upon which to base said question, and that the question
was illegal. The court overruled each objection and the
defendant separately excepted. In answer to said ques-
tions, the witnesses varously estimated the reasonable
compensation for professional services so rendered, at
from $1,500 to $2,500. The defendant separately moved
the court to exclude the testimony of each of these wit-
nesses, on the same ground as interposed to the question.
The court overruled each of these motions, and the de-
fendant separately excepted.

The defendant introduced in evidence the depositions
of Drs. W. C. Jackson and W. G. Bibb. Dr. Jackson
testified that he attended the defendant's testator during
his last illness as consulting physician with Dr. Wood;
and that a fair and reasonable compensation for the ser-
vices rendered by himself and Dr. Wood would be one
hundred and thirty dollars.

Dr. W. G. Bibb, a witness for the defendant, testified
that he was the regular physician of defendant's testa-
tor during the years 1893 and 1894; that his general
health was very good save some heart trouble; that he
had no chronic disease and never complained of any;
and that he did not mention or complain of having had
syphilis in former years or of suffering from the effects
of such disease.

In response to defendant's demand for a bill of par-
ticulars, plaintiff's attorney furnished the attorney of
defendant with an itemized statement of plaintiff's ac-
count, but plaintiff did not file any itemized statement
with the clerk of the court. During the examination by
plaintiff of his witnesses to prove the extent and value
of his services, defendant's attorney held this itemized
statement furnished him by plaintiff, and on cross-ex-
amination would ask witnesses if the services testified
about were at Barksdale's residence, or at the drug
store; if they were prior or subsequent to March, 1895,

[Morrissett, Exec. v. Wood.]

&c. Plaintiff's attorney observing defendant's attorney using this bill of particulars demanded to see it. Defendant replied that it was the bill of particulars furnished by the plaintiff for the guidance and protection of the defendant; that it had not been filed, and that plaintiff had no right to demand it; that it was presumably a correct abstract of the items on plaintiff's books then in plaintiff's possession, and in the court house. The court sustained the defendant in his right to withhold from the plaintiff this paper, the court simply stating that the plaintiffs would have the right to re-examine the witnesses in reference to the various dates inquired about by the defendant.

After the plaintiff had introduced his evidence and the defendant had offered in evidence the depositions of Drs. Jackson and Bibb, the court adjourned for the night. The bill of exceptions recites: "The defendant, the next morning, asked the court to exclude so much of the evidence of the witness Carr as related to the visits of Dr. Wood to Barksdale at his home on several occasions prior to November, 1895; and based his motion to exclude upon the ground that in the paper above referred to, which he had refused to offer in evidence, and which he called a bill of particulars, Dr. Wood, the plaintiff, had not claimed any compensation for visits made by him to Barksdale at his home except during decedent's last illness; and in support of said motion defendant's counsel stated in open court that he held in his hand a bill of particulars which had been furnished to him by plaintiff on demand; but he never offered any evidence to show that such paper was in fact a bill of particulars. Defendant admitted that said paper was the same paper about which he had cross-examined the plaintiff's witnesses the day previous and which he had refused either to exhibit to the plaintiff or offer in evidence before the jury. The court refused to exclude the evidence, and defendant excepted. The defendant then offered the said paper in evidence in support of said motion, but without proof that the same was in fact a bill of particulars. The plaintiff objected to the introduction of said paper on the grounds that it came too late;

that the evidence had closed and that defendant's counsel had refused to exhibit the paper to plaintiff's counsel or introduce it in evidence during the examination of witnesses. Thereupon the court refused to admit said paper writing in evidence, and defendant excepted."

Upon the introduction of all the evidence the defendant requested the court to give to the jury the following written charge, and duly excepted to the court's refusal to give the same as asked: "The court charges the jury that there is nothing more sacred about the account of a physician than any other indebtedness, and that if from the facts in this case they find that there was no agreement as to fee to be charged, then the plaintiff is only entitled to a reasonable fee for service, actually rendered, as proven by the evidence."

There were verdict and judgment in favor of the plaintiff for $1,199. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

E. P. MORRISSETT and CHAS. WILKINSON, for appellant.—The testimony of the plaintiff as a witness as to his acquaintance with the defendant's testator, and to his having a certain disease from which he died, was incompetent and should have been excluded upon motion of the defendant.—Code, § 1794; *Killen v. Lide*, 65 Ala. 505; *Miller v. Cannon*, 84 Ala. 59; *Tisdale v. Maxwell*, 58 Ala. 40; *Dismukes v. Tolson*, 67 Ala. 386; *Wood v. Brewer*, 73 Ala. 259.

The testimony as to the value of the deceased patient's estate was wholly irrelevant, incompetent and inadmissible. The issue before the jury was what were the services rendered by the plaintiff reasonably worth. The fact of the wealth or poverty of the patient could not legally affect the value of the services.—*Ware v. Cartledge*, 24 Ala. 622; *Adams v. Adams*, 29 Ala. 433; *Pool v. Devers*, 30 Ala. 672.

The court should, on motion of the defendant, have excluded the evidence of the witness Carr.

When the plaintiff's evidence was in, it was the right of the defendant, at any time before the jury retired, to move the court to exclude illegal testimony.—*Bush & Co.*

*v. Jackson,* 24 Ala. 273, where it is said: "It is the duty of the court, in any stage of a cause, to exclude from the jury illegal proof." Also, *Pool v. Devers,* 30 Ala. 672; *Pearsall v. McCartney,* 28 Ala. 110; *Avary v. Searcy,* 50 Ala. 54; *Warren v. Wagner,* 75 Ala. 188-201.

LOMAX, CRUM & WEIL, and A. A. WILEY, *contra.*—The testimony of the plaintiff as to his acquaintance with the defendant's testator as to the character of the disease from which he suffered and which resulted in his death was not within the exceptions provided in the statute. Code, § 1794; 1 Brick. Dig., 886 and authorities cited; 3 Brick. Dig., 443 and authorities cited; *Glaze v. Blake,* 56 Ala. 379. The testimony of the witness as to the value of the defendant's estate was clearly competent.—*Wood v. Brewer,* 73 Ala. 259; *Gamble v. Whitehead,* 94 Ala. 335.

The testimony of the witness Stowers was clearly competent to enable the jury to determine whether or not the claim of the plaintiff was a proper measure of compensation, the ability to pay being an element necessary in making up this conclusion.—*Lange v. Kearney,* 4 N. Y. Supplement 14; *Czarnowski v. Zeyer,* 35 La. Ann. 796; 18 Am. & Eng. Encyc. of Law 439, note.

The objection to the hypothetical question put to the physicians and the motion to exclude the answer of Dr. Lucius Gaston were properly overruled. The witnesses called to prove the value of the services were persons who from their skill in such matters were qualified to speak.—*Mock v. Kelly,* 3 Ala. 387; *Collins v. Fowler,* 4 Ala. 647. The facts being disputed, they could not express an opinion upon the case on trial, and, hence, had to be examined hypothetically.—*Page v. State,* 61 Ala. 16; *Wilkerson v. Moseley,* 30 Ala. 572. The hypothetical question need not embody all matters of which there is any evidence, but may embody such a state of facts fairly within the range of the evidence as counsel may deem to have been proved.—1 Thompson on Trials, p. 507, § § 609, 610; 7 Am. & Eng. Encyc. Law, 515, note.

McCLELLAN, C. J.—The statement of the plaintiff as a witness that he knew the defendant's testator, and

[Morrissett, Exec. v. Wood.]

that he had a certain disease for several years before his death, and that he died of that disease complicated with another which witness named, involved no transaction with the deceased, and is not within the first—or any other—exception to the competency of parties as witnesses under section 1794 of the Code.

The trial court erred in admitting testimony as to the value of the patient's estate, against the objection of the defendant. The inquiry was as to the value of the professional services rendered by the plaintiff to the defendant's testator and, as the case was presented below, the amount or value of the latter's estate could shed no legitimate light upon this issue nor aid in its elucidation: The cure or amelioration of disease is as important to a poor man as it is to a rich one, and, *prima facie* at least, the services rendered the one are of the same value as the same services rendered to the other. If there was a recognized usage obtaining in the premises here involved to graduate professional charges with reference to the financial condition of the person for whom such services are rendered, which had been so long established and so universally acted upon as to have ripened into a custom of such character that it might be considered that these services were rendered and accepted in contemplation of it, there is no hint of it in the evidence.

The hypothetical question propounded to the expert witnesses, Gaston and others, was objectionable only because one of its postulates was the value of the testator's estate. It is not necessary for such questions to postulate every fact of which there is evidence before the jury, but they are unobjectionable if they hypothesize a state of facts which the jury is authorized to find.

The evidence of the witness Carr as to services rendered by the plaintiff to Barksdale, the defendant's testator, prior to November, 1895, was competent as it stood in the case at the time when the evidence was closed by both parties whereon the court adjourned till the next day. It was, we think, in the discretion of the court to decline to reopen the case on its reconvention for the purpose of allowing the defendant to offer other evidence the effect of which would or might have been to show the impertinency of this testimony of Carr.

[Price v. Cooper.]

No *account* of the plaintiff was offered in evidence by him, or was at all in evidence. The charge requested by the defendant was therefore abstract in a sense. Moreover, this charge is sufficiently argumentative in character to justify the court's action in refusing to give it.

For the error pointed out, the judgment must be reversed. The cause is remanded.