**ANDERSON et al. v. CAULK.  (No. 2125.)**

Court of Civil Appeals of ·Texas.  El Paso.
April 5, 1928.

Rehearing Denied May 3, 1928.

1. **Executors and administrators** ⏆➡7—**Trusts** ⏆➡261—**Judgment against defendants as trustees and independent executors held not warranted as to defendants whose representative capacity was not shown (Rev. St. 1925, arts. 3403, 3735).**

Judgment against defendants as trustees and independent executors of estate of decedent, in suit to recover for medical and surgical services rendered deceased, *held* not warranted, under

Rev. St. 1925, arts. 3403, 3735, as to defendants whom proof failed to identify as trustees or executors of the estate.

2. **Executors and administrators** ⏆➡14—**Trusts** ⏆➡155—**Trustee or executor receives authority not by will, but by appointment and qualification as such.**

Trustee or executor derives no authority over estate by reason of his appointment as such by terms of the will, but receives his authority when the will is probated and he is appointed and qualifies.

3. **Customs and usages** ⏆➡12(2)—**Law does not imply patient's knowledge of alleged custom of physicians to consider patient's financial ability, in determining charge.**

Law does not imply patient's knowledge of· alleged custom of physicians to consider patient's financial worth and ability to pay, in determining amount of fee to be charged for professional services.

4. **Customs and usages** ⏆➡12(1)—**Custom does not constitute fixed element of contract unless known to both parties.**

·  A custom, to constitute a fixed element of a contract, must be known to both parties.

5. **Customs and usages** ⏆➡12(1)—**Evidence of custom to consider financial ability of patients in determining fee held inadmissible, in physician's action against estate for professional services, where neither universality of custom nor deceased patient's knowledge thereof was shown.**

In ·physician's action against estate to recover for medical and surgical services rendered deceased, evidence of custom of physicians to consider financial ability of patient in determining amount or reasonableness of fee for professional services *held* inadmissible, where it was not shown that custom was known to deceased patient or ·that it was so general or universal that patient was chargeable with knowledge of it.

6. **Master and servant** ⏆➡70(1)—**Reasonable compensation is allowed on implied agreement for services.**

Law allows recovery of a reasonable compensation upon an.implied agreement for rendition of services.

7. **Executors and administrators** ⏆➡221(3)—**Prominence and wealth of deceased patient held not proper elements for jury's consideration, in physician's action against estate to recover reasonable value of services.**

In. suit by physician against patient's estate on implied· agreement for rendition of professional services, prominence and wealth of deceased patient *held* not proper elements for consideration of jury in determining reasonable value of medical and surgical services rendered.  '

8. **Witnesses** ⏆➡159(14)—**Testimony of physician concerning operation on deceased patient held incompetent in action against estate for services as relating to transaction with deceased (Rev. St. 1925, art. 3716).**

In physician's suit against patient's estate to recover reasonable value of services, physi-

---

⏆➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

cian's testimony as to what he saw or did in performance of operation or treatment of patient *held* incompetent, under Rev. St. 1925, art. 3716, as involving transaction with deceased.

9. **Evidence ⊛⟶555—Admission of evidence of reasonable value of physician's services, in response to hypothetical questions assuming facts concerning patient's physical and financial condition not properly in evidence, held error.**

Evidence introduced in response to hypothetical questions asked doctors, in action to recover reasonable value of physician's services, was improperly admitted where hypothetical questions assumed facts concerning patient's physical condition and treatment and patient's wealth which were improperly admitted in evidence.

10. **Evidence ⊛⟶555—Opinion of expert must be based upon provable facts.**

Facts upon which an expert witness bases his opinion must be provable facts in the case.

11. **Evidence ⊛⟶555—Witnesses ⊛⟶159(9)— Testimony of physician suing estate for services, as to reasonable charge, based on deceased patient's wealth and on transactions with deceased, held inadmissible (Rev. St. 1925, art. 3716).**

In physician's action against estate of patient for reasonable value of professional services, plaintiff's testimony as to familiarity with professional charges in locality and other places for the services he rendered and statement as to what the reasonable charge was *held* inadmissible, under Rev. St. 1925, art. 3716, as relating to transaction with deceased person and as embracing fact of patient's wealth which was not properly provable.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Suit by John R. Caulk against T. D. Anderson and others, as trustees and independent executors of the estate of George W. Brackenridge, deceased. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Denman, Franklin & Denman, of San Antonio, for appellants.

Thos. M. Pierce, of St. Louis, Mo., and F. C. Davis, Ben H. Kelly, and Emmett B. Cocke, all of San Antonio, for appellee.

WALTHALL, J. Appellee, John R. Caulk, brought this suit against T. D. Anderson, Thomas H. Franklin, Frank G. Huntress, and M. C. Judson, as trustees and independent executors of the estate of George W. Brackenridge, deceased, by petition filed on the 16th day of December, 1921, in which petition he sought to recover the sum of $10,000, alleged to be due by the deceased, George W. Brackenridge, for medical and surgical services rendered to the said Brackenridge, the petition admitting the payment by the said Brackenridge during his life of $5,000. The petition was amended on the

31st day of May, 1927, by a second amended original petition, in which petition it was alleged for the first time since the filing of the original petition that the plaintiff was entitled to recover for such medical and surgical services the sum of $15,000, less the sum of $5,000 admitted in the petition to have been previously paid by the said Brackenridge. The defendants answered by demurrers and exceptions, by plea of the statutes of limitations of two and four years as to the additional $5,000 sued for in said second amended original petition. They also denied generally all of the allegations in plaintiff's petition; averred that the $5,000 paid had been paid and received in full settlement for plaintiff's services; set up in detail the circumstances under which the payment was made and received by plaintiff, and that under such circumstances plaintiff was estopped from claiming anything above said $5,000; averred that the said $5,000 was paid by the said Brackenridge in full settlement, and that, if it was not received by plaintiff in full settlement, nevertheless it had been had and held by him knowing that the said Brackenridge intended it to be in full settlement, and that in truth and in fact plaintiff's services were not worth exceeding the sum of $1,000, and that if such payment was not to be treated as a settlement the defendants had a right to recover of plaintiff the amount paid above said $1,000, with interest; that the said Brackenridge had paid all hospital charges, nurses charges, etc., setting out in detail the amounts paid, all of which payments were over and above the $5,000 paid direct to plaintiff as above shown. The plaintiff excepted to certain portions of the answer. The demurrer and exceptions of defendants were overruled and the ruling duly excepted to, the exceptions of plaintiff were sustained, and to this ruling defendants duly excepted. Trial was had before a jury on special issues submitted by the court. These special issues were answered favorably to plaintiff by the jury and verdict given for $10,000 as the value of plaintiff's services. Against this amount the court in its judgment credited the $5,000 paid and rendered judgment in favor of plaintiff for the sum of $7,279.17, covering principal and interest on the unpaid $5,000, the interest being calculated at 6 per cent. per annum from and after the 1st day of January following the alleged rendition of services by plaintiff to said Brackenridge. Motion for new trial was duly filed within the time required by law and amended motion subsequently filed. The motion being overruled by the court, the ruling of the court was duly excepted to and notice of appeal given.

## Opinion.

There are no allegations in appellee's petition to the effect that he qualified to practice

his profession in Texas as required by the statutes of this state and registered as required by those statutes; nor is it alleged that appellee had qualified and registered as required by statutes in Missouri, where his professional services were rendered, nor that the laws of Missouri did not require such qualification or registration, nor is it alleged that the laws of that state differed from the Texas statutes, nor that if they differed, in what respects they differed. The second proposition points out that there is no evidence in the record showing that appellee had qualified as required by the statute to practice medicine under the statutes of either state, nor that the laws of Missouri were different from the statutes of Texas in the particular matters involved. Appellants pleaded a general demurrer, and special exception to appellee's petition, which the trial court overruled, and appellants, under propositions 1 and 2, assign error to the overruling of their general demurrer and special exception. The special exception reads:

"They specially except thereto and say that it appears upon the face of said petition that no right to recover on the allegations in said petition is shown in the plaintiff as against the estate of George W. Brackenridge, deceased, or those executors as executors or trustees of said estate."

The special exception, under rule 18, rules for the district and county courts, we regard as a general and not a special exception.

The courts in this state and elsewhere are not uniform in their holdings on the issue presented in appellant's first proposition. Some of our courts hold, as in Swift v. Kelly, 63 Tex. Civ. App. 270, 133 S. W. 901, that it is necessary for one suing to recover for medical services to allege and prove such compliance with the laws regulating the practice of medicine, and that a failure to so allege in the petition is fatal on general demurrer thereto; others hold that it is a matter defensive, as in Texas Employers' Ins. Ass'n v. Drummond et al. (Tex. Civ. App.) 267 S. W. 335, affirming the judgment of the trial court by a majority opinion of this court. In that case a dissenting opinion was filed, the case of Swift v. Kelly and other Texas cases were reviewed, a writ of error was granted, and in Texas Employers' Ins. Ass'n v. Drummond, 279 S. W. at p. 1116, in a memorandum opinion, Judge Bishop of the Commission of Appeals, Section A, says:

"After careful consideration of the entire record, we have concluded that the affirmance of the judgment is correct. We approve the holding of the court on the questions discussed in the majority opinion, and recommend that the judgments be affirmed."

The recommendation of the Commission of Appeals was adopted by the Supreme Court. We think we need not discuss the proposition further, in view of the disposition we think

to make of the case as the petition can be amended and the difficult question eliminated.

Appellants insist that there is no evidence in the record that appellants, at any time, were either the independent executors or trustees of the estate of George W. Brackenridge, deceased, and for that reason it was error to refuse to give special requested instructions of appellants to return a verdict in their favor.

One of the appellants, Mr. Frank G. Huntress, a witness for appellants, testified:

"I am one of the trustees of his [Brackenridge] estate, so designated by him. * * * The secretary of the trustees, Mr. Anderson, is one of the trustees, is supposed to be in custody of the archives and personal effects of Col. Brackenridge. * * * He is also secretary of the trustees' committee."

The above is all the reference we find in evidence on the question presented. The appellants, sued as trustees and independent executors of the estate of Col. Brackenridge, are alleged to be Thomas D. Anderson, Thomas H. Franklin, Frank G. Huntress, and M. C. Judson. Judgment was rendered that:

"The plaintiff, John R. Caulk, do have and recover of and from the defendants T. D. Anderson, Thomas R. Franklin, Frank G. Huntress, and M. C. Judson, not personally, but in their capacities as trustees and independent executors of the estate of George W. Brackenridge, deceased, and of the estate of George W. Brackenridge, deceased, the sum of $7,279.17," and interest and costs.

If it be conceded that the above evidence is sufficient to identify and show that Huntress and Anderson are "trustees and independent executors of the estate of George W. Brackenridge, deceased, and acting as such under the provisions of the last will and testament of the said George W. Brackenridge," as stated in the second amended original petition upon which the trial was had, the evidence does not show that either Franklin or Judson was such trustee or executor.

[1, 2] Articles 3403 and 3735, R. C. S. 1925, provide the method of making the proof of the appointment and qualification of appellants as trustees and executors of the estate, and such appointment and qualification, we think, should be followed by proof that appellants, at the time of the trial, were acting as such trustees and executors in the matter of the estate, and not leave the issue to inference or innuendo. Unless the proof shows that appellants, at the time of the trial, were the trustees and executors of the estate, no judgment could properly have been rendered against them as such. American Loan & Mortgage Co. v. Bangle (Tex. Civ. App.) 153 S. W. 662. We do not mean to hold that the above-recited articles of the statute furnish the only and exclusive rules by which the liability of appellants in their representative capacity can be shown, but we do hold that

it must be made to appear that appellants were, at the time of the trial, such representatives of the estate. We might add, in view of another trial, that a trustee or executor derives no authority over the estate by reason of his appointment as such trustee or executor, by the terms of the will itself. He receives his authority as trustee and executor when the will is probated and he is appointed as such trustee and qualifies as such. The trustee is then acting as such, in the matter of the estate, under his appointment and qualification. We are led to make the observation in view of the allegation that appellants were the trustees and executors of the estate "and acting as such under the last will and testament" of deceased. Roberts and Wife v. Stuart, Executor, 80 Tex. 379, 15 S. W. 1108.

Appellee alleged, in substance, in paragraph 1, that at the time and before said operation was performed and the medical services, care, and treatment were rendered, for the value of which he sues, George W. Brackenridge was a very prominent and wealthy man and well able to pay well for such services, and that both parties understood and contemplated at the time of the treatment and thereafter during such treatment that Mr. Brackenridge would pay a full, adequate, and reasonable fee to successfully treat him and perform on him the operation necessary to save and prolong his life and relieve him of the physical pain, suffering, and anguish he was at that time undergoing. The petition then alleges that due to the nature of the operation, its complications, and the skill, experience, and knowledge necessary in the performance of the operation and the preliminary and subsequent treatment of the patient, and due to the successful operation, its prior and subsequent treatment and restoration of the patient to health, a charge of $15,000 for such service is a reasonable charge and compensatory, and, in paragraph 2, alleges that in so far as a custom has been or can be established, said charge was the prevailing custom in the city of St. Louis where the operation was performed, and throughout the larger cities of the United States for such services to and upon the person as prominent and as able to pay as was George W. Brackenridge, and a person of his age, physical condition, and circumstances. In paragraph 6 it is alleged that:

"George W. Brackenridge was a very prominent and wealthy man, and had no family or other persons legally dependent, upon him for maintenance and support."

Appellants specially excepted to the petition, to all of the allegations in paragraph 1 of said petition wherein it is alleged that the deceased, George W. Brackenridge, was a very wealthy man, and say that the wealth of said Brackenridge is not a matter to be considered in determining the reasonableness of any fee charged by plaintiff herein against him for any surgical or medical treatment of him by plaintiff. Appellant specially excepted to paragraph 2, as above, alleging a custom with reference to charging fees to persons able to pay because of their wealth, as not being an element to be considered in fixing the reasonableness of any fee charged for medical or surgical services. Appellants also specially excepted to so much of paragraph 6 as alleges that Brackenridge was a very wealthy man and to so much as alleges a custom among physicians and surgeons in Texas and Missouri and other states to gauge charges for medical and surgical services according to the financial ability to pay, taking into consideration the financial burdens resting on the patient because of dependents and as well of other financial burdens, and that Brackenridge knew of said custom, appellants stating as ground of the exception that the wealth of the patient nor the custom is not to be considered in fixing the medical or surgical fees, and that there is no allegation that Brackenridge specially agreed to pay the fee charged or pay in accordance with the alleged prevailing ·custom. The trial court overruled the exceptions. Hypothetical questions were propounded, over objection, as above indicated, to some of the witnesses, testifying as experts, in which the witness was asked to give his opinion, based on the hypothetical question, as to what would be a reasonable charge for services rendered by Dr. Caulk, based upon the statement in the question that the patient was a man of large wealth at the time the medical and surgical services were rendered. The witnesses answered in amounts varying from ten to twenty-five thousand dollars. Special instructions were presented to the trial court requesting that the jury be instructed not to consider the wealth of Mr. Brackenridge as an element in determining the reasonableness of the compensation. The special charges were refused.

To the above appellants assign error submitting that the wealth of George W. Brackenridge was not an element to be considered by the jury in estimating the reasonable value of any professional service that appellee, Dr. Caulk, may have rendered.

On special issues submitted the jury found: First, that $10,000 would have been a reasonable compensation for the professional services rendered by· Dr. Caulk to George W. Brackenridge during the time he was under his care and treatment at the Barnes Hospital in St. Louis. Second, that the check for $5,000 sent by Col. Brackenridge and accepted by Dr. Caulk was not as full settlement for the professional services rendered by Dr. Caulk to Col. Brackenridge at said hospital. On the verdict returned the court entered judgment for $7,279.17, being the bal-

ance due, and interest on the unpaid balance, after allowing the credit of $5,000.

Appellee insists that the universal custom prevails that a surgeon has the right to graduate his charge according to the prominence of the patient and his ability to pay, where the suit is upon an implied contract, as alleged, and established by the evidence, and refers us to Succession of Haley, 50 La. Ann. 840, 24 So. 285; Lange v. Kearney, 127 N. Y. 676, 28 N. E. 255; Czarnowski v. Zeyer, 35 La. Ann. 796; Cotnam v. Wisdom, 83 Ark. 601, 104 S. W. 164, 12 L. R. A. (N. S.) 1090, 119 Am. St. Rep. 157, 13 Ann. Cas. 25, and notes. Appellee also reviews Swift v. Kelly, 63 Tex. Civ. App. 270, 133 S. W. 901, and Hamman v. Willis, 62 Tex. 507, and undertakes to distinguish the last two Texas cases, under the facts of the instant case. We have carefully reviewed the cases.

Appellee alleged and sufficiently proved a "custom among physicians to charge a patient for professional services rendered 'in keeping with his prominence and the financial worth and ability of the patient to pay." Appellee also alleged that Col. Brackenridge "knew as did plaintiff the prevailing and universal custom prevailing among physicians," the custom as above stated.

[3-5] Appellant relies upon the custom as it prevailed among physicians, as alleged, and Col. Brackenridge's knowledge of such custom as proved facts in establishing the implied agreement that the prominence of Col. Brackenridge and his financial worth and ability to pay should be considered in determining the amount or reasonableness of the fee to be charged by Dr. Caulk for his professional services rendered and thereafter to be rendered. Appellants insist that there is no proof that Col. Brackenridge knew of such a custom. We have found no such evidence in the record, and the law does not imply a knowledge of such custom. A custom, to constitute a fixed element of a contract, must be known to both parties. Unless both parties knew of the custom, the custom alleged could form no part of the implied understanding or agreement, and all evidence as to such custom should have been excluded. It is not alleged or shown that the custom among physicians and surgeons was so general or universal that Col. Brackenridge was chargeable with knowledge of it, so that we are not considering that character of custom. Buzard v. Jolly (Tex. Sup.) 6 S. W. 422; Mills v. Ashe, 16 Tex. 296; Brady v. Richey & Casey (Tex. Civ. App.) 187 S. W. 508; Gano v. Palo Pinto County, 71 Tex. 99, 8 S. W. 634; C. J. vol. 17, p. 458, and note 96.

[6, 7] There still remains the larger question: In a suit on an implied agreement, are the prominence and wealth of the patient elements to be considered in estimating the reasonable value of the professional services rendered or to be rendered by the physician and surgeon?

The jury evidently awarded an additional $5,000 to the like amount already paid by the patient. Dr. Caulk testified that, if the patient had been a man of moderate means, his charge for the services rendered would have been around $500 to $1,000. On an implied agreement the law allows a reasonable compensation.

The question has been before our Texas courts. Without reviewing the case at length, the case of Swift v. Kelly, 63 Tex. Civ. App. 270, 133 S. W. 901, disposes of the question presented. In that case, the Fort Worth court said:

"We are of opinion, further, that the court erred in permitting plaintiff to show the reasonable value of his services by proof that defendant was wealthy, coupled with further proof of a custom among physicians to graduate their charges according to the financial condition of the patient, and to charge a wealthy person a higher fee by reason of his superior ability to pay."

The court there recognizes the conflict in the authorities, and states the reasoning for the rule adopted, which we think is sound. If physicians and surgeons, by a custom among themselves, determined the reasonable value of their services by such test, the merchant, mechanic, and indeed all other combinations of service, including that of ordinary labor, could fix the value of their service in the same way. To the same effect are Robinson v. Campbell, 47 Iowa, 625; Cotnam v. Wisdom, 83 Ark. 601, 104 S. W. 164, 12 L. R. A. (N. S.) 1090, 119 Am. St. Rep. 157, 13 Ann. Cas. 25; after reviewing the case relied on by appellee, and referred to above; Morrissett v. Wood, 123 Ala. 384, 26 So. 307, 82 Am. St. Rep. 127.

The evidence in Hamman v. Willis, 62 Tex. 507, to which we are referred, did not develop a case in which the pecuniary condition of the parties could enter into the elements of compensation to be charged, and the case, for that reason, is not in point, but it might be remarked that error was assigned to an instruction given the jury to the effect that no greater fee would be reasonable against a wealthy man than a poor man for the same service, and that the jury would not allow the wealth of the parties engaged in the litigation to influence their finding as to what would be a reasonable fee for the services. The Supreme Court remarked that there was evidence before the jury that the litigants were of the wealthiest in their respective localities, and that the charge was a proper precaution that the jury would not be misled or prejudiced by means of it. Here, while the court in the charge very properly did not submit to the jury that they could consider the prominence and wealth of Col. Brackenridge as elements to be considered in estimating the reasonable compensation for the services rendered, still the wealth of the patient was made an element to be considered both in

the pleading and the evidence, and was considered by the jury. We have concluded that it was error, and that the fourth point must be sustained.

The fifth point assigns error in permitting Dr. Caulk to testify, in violation of article 3716, R. S. 1925, to the professional services rendered by him to Col. Brackenridge, deceased, and as to the value of the services, and as to the circumstances under which such services were rendered, and as to the physical condition of the patient when the services were rendered, and as to the bill rendered by him to the patient for such services, and as to the receipt by him of a check for $5,000 sent him by the patient, and that he did not receive said check in full payment of his services, over the objections of appellants that all of said evidence was as to a transaction with a deceased person and as to statements of such deceased person.

The evidence of Dr. Caulk is lengthy, covering many pages of the record. He testified, in substance, that he had occasion to treat and administer to the body of Col. Brackenridge; that the patient was brought to him by another doctor; that he administered professionally for two months to the patient in line with his specialty; learned a history of his case prior to the time of seeing him; states in much detail the physical condition in which he found the patient, his trouble, its causes, the necessity for prompt action, the things necessary to be done, things to be avoided in the treatment, what was done, the results on the patient; stated the number of personal visits made; stated and described the instruments used in various treatments; explained the meaning of the medical terms used; was permitted to state the receipt by him of the $5,000 check elsewhere referred to, and how he received it; testified as to the custom that prevailed in St. Louis and other cities among physicians and surgeons elsewhere referred to, and the reasonableness of the charge in the case; spoke in detail as to the things that enter into the fixing of a bill as recompense for services rendered in surgery.

The article of the statute invoked provides that, in cases such as the case at bar, "neither party shall be allowed to testify against the others as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party," and the provisions of the article are made to extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent.

The witness was not called to testify by the opposite party, and the witness did not testify as to any statement by the testator. The direct point of the inquiry then is, Do the matters about which Dr. Caulk was permitted to testify involve any transaction with

Col. Brackenridge, the decedent? The statute does not define the term "any transaction with," as used in the article. The action brought by Dr. Caulk against the trustees of the estate of the decedent is one that extends to and arises out of a professional service rendered by him to the decedent. In Garwood v. Schlichenmaier, 25 Tex. Civ. App. 176, 60 S. W. 573, Judge Neill of the San Antonio court says:

"Webster defines 'transaction' as follows: '(1) The doing or performing of any business; management of any affair; performance. (2) that which is done; an affair; as the transactions of the exchange.' It is defined in Anderson's Dictionary of Law to be 'whatever may be done by one person which affects another's rights, and out of which a cause of action may arise.'"

In that case the suit was for the value of professional services as physician and against the administrator of the estate, and Dr. Garwood had been permitted to testify to the condition of health in which he first saw the decedent; the character of the disease; that he had treated the decedent and the period of time; that he had written prescriptions for him. It was held that the professional services were such transaction with the decedent as the witness, Dr. Garwood, was inhibited from testifying to. An account by a physician for his services to the decedent is not such as can be proved by the physician in an action by the physician against the trustees of the estate of the decedent. It was held in Morrissett v. Wood, supra, that where the performance of the services had been proved aliunde the physician, party to the action, could then testify to the value of the services.

In Barnett's Adm'r v. Brand, 165 Ky. 616, 177 S. W. 461, the Kentucky Court of Appeals, under a statute very similar to our own, held that the word "transaction" as used in the statute relating to the admissibility of evidence of transactions has often received judicial interpretation, and is held to mean "every variety of affairs which forms the subject of negotiations or actions between the parties." In that case it is said:

"It is accordingly held that a physician is incompetent to testify in his own behalf as to the number of visits he made to the deceased, what he did for him and how he relieved his suffering,"

—and refers to Duggar v. Pitts, 145 Ala. 358, 39 So. 905, 8 Ann. Cas. 146. The ruling is based on the ground that the rendition of such service is a transaction, within the meaning of the article of the statute. See, also, some other cases not heretofore referred to: Cash v. Kirkham, 67 Ark. 318, 55 S. W. 18; Marmion v. McClellan, 11 App. D. C. 467; Boyd v. Cauthen, 28 S. C. 72, 5 S. E. 170; Leahy v. Timon, 110 Tex. 73, 215 S. W. 951; Id. (Tex. Civ. App.) 204 S. W. 1029; Holland v. Nimitz, 111 Tex. 419, 232 S. W.

298, 239 S. W. 185; Roberts v. Yarboro, 41 Tex. 449; Heath v. Moore (Tex. Civ. App.) 146 S. W. 709; Moores v. Wills, 69 Tex. 112, 5 S. W. 679.

[8] We have concluded that an operation performed by a physician or surgeon is a transaction, within the meaning of article 3716, R. C. S. 1925, and that Dr. Caulk, plaintiff, suing the trustees of the estate of the decedent for his compensation for services rendered the decedent, was not a competent witness to testify to what he saw or did in the performance of the operation or treatment.

The sixth point is ruled by what is said in discussing the fifth.

[9, 10] The seventh point assigns error to the admission of the evidence of certain doctors named who testified by deposition as experts as to the value of the services rendered Col. Brackenridge. The evidence objected to was based upon hypothetical questions propounded to the witnesses, the evidence presenting the hypothesis contained in the question was that of Dr. Caulk as to the physical condition in which he found Col. Brackenridge and the history of the case as given by Dr. Caulk when brought to him for treatment and while treating him, the result of the treatment; that Col. Brackenridge was a very prominent, successful business man and wealthy at the time the service was rendered, the aggregate value of his property being more than a million dollars. The question then propounded being:

"Now, in view of the facts and circumstances detailed in this question and the services therein stated, will you please state what, in your opinion, would be a fair and reasonable and usual charge for such services and such results?"

The answers of the three witnesses in stating the value of the services range from ten to twenty-five thousand dollars.

The point must be sustained under the authorities previously referred to. The facts upon which an expert witness bases his opinion must be provable facts in the case. If we are not in error in holding that Dr. Caulk could not properly testify to the facts embraced in hypothetical question, and that the prominence and wealth of the decedent could not be shown as the basis for compensation to be allowed for the professional services rendered, it follows that the expert opinions could not be based on such facts.

[11] The eighth point is ruled by what has been previously said in discussing other points. Dr. Caulk could not testify, over objections, that he was familiar with professional charges in St. Louis and other places for the services he rendered decedent, and state what the reasonable charge was. His statement related to a transaction with a deceased person, and also, under his own evidence, necessarily embraced other facts not properly provable, such as the wealth of the decedent and the custom among physicians in fixing their fees.

The remaining propositions not discussed in this opinion are controlled by what we have said in discussing others.

For reasons stated, the case is reversed and remanded.